Paul L. Maloney, United States District Judge
Defendant Wells Fargo foreclosed the mortgage on Plaintiff Melissa Hebeler's property. By statute, if the property sold at a foreclosure sale was used for agricultural purposes, the redemption period is one year. Hebeler asserts that because she sold some agricultural products that she grew on her property, she is entitled to the one-year redemption period. This is an issue of first impression. The statute provides no guidance for determining when property is used for agricultural purposes and no court appears to have considered the question. Based on the statutory scheme and the evidence in the record, the Court has no difficulty concluding that Hebeler's property was not used for agricultural purposes, as that phrase is used in Michigan's foreclosure-by-advertisement statute.
I.
Plaintiff Melissa Hebeler filed a motion for partial summary judgment. (ECF No. 19.) Defendant Wells Fargo filed a motion for summary judgment. (ECF No. 23.)
*686 Having reviewed the record, the motions will be resolved without oral argument. See W.D. Mich. LCivR 7.2(d).
Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c) ; Payne v. Novartis Pharms. Corp. , 767 F.3d 526, 530 (6th Cir. 2014). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1) ; Hollis v. Chestnut Bend Homeowners Ass'n , 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. Matsushita , 475 U.S. at 574, 106 S.Ct. 1348 ; Jakubowski v. Christ Hosp., Inc. , 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.' ") (quoting Anderson , 477 U.S. at 248, 106 S.Ct. 2505 ). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson , 477 U.S. at 251-252, 106 S.Ct. 2505.
II.
Foreclosure proceedings on the property began in November 2016. Orlans Associates, on behalf of Defendant, sent Hebeler a letter informing her that her mortgage loan was in default. (ECF No. 24-14.) The original mortgage amount was $ 187,200.00 and Hebeler owed almost $ 223,000. (Id. PageID.310-11.) Orlans Associates then began publishing weekly notices of the default and the foreclosure sale in the local paper. (ECF No. 1-1 PageID.12.) Orlans Associates also posted a notice of the default and foreclosure sale on some conspicuous place on Hebeler's property. (ECF Nos. 1-1 Posted Notice PageID.11.) Hebeler, however, never saw the posted notice. (ECF No. 21-21 Hebeler Dep. at 28 PageID.156.)
Hebeler's property was sold at a foreclosure sale on July 5, 2017. (ECF No. 24-2 Sheriff's Deed PageID.236.) The sale was originally scheduled to occur on January 11, 2017. (Posted Notice.) The foreclosure sale was adjourned weekly from January 11 to July 5. (ECF No. 24-1 Notices of Adjournment.) The Federal National Mortgage Association (Fannie Mae) purchased the property. (ECF No. 24-2 Affidavit of Purchaser PageID.241.)
Without dispute, every notice and the Affidavit of Purchaser states that the redemption period following the foreclosure sale would be six months.
Hebeler filed this lawsuit in the Clinton County Circuit Court on October 13, 2017. In her prayer for relief, she requests a declaration that the foreclosure sale was void. Hebeler claims she did not receive sufficient notice and that Wells Fargo did not act in good faith because the foreclosure sale occurred while she was negotiating for mortgage assistance. In the alternative, she requests a declaration that the redemption period is one year, not six months.
*687 III.
A. Notice
The Sixth Circuit and the Michigan Courts have held that foreclosure-by-advertisement notice requirements in Michigan's statute are consistent with the due process requirements under both common law and Supreme Court precedent. See Garcia v. Fed. Nat'l Mortg. Ass'n , 782 F.3d 736, 741 (6th Cir. 2015) ; Cheff v. Edwards , 203 Mich.App. 557, 513 N.W.2d 439 (1994) (upholding the constitutionality of Michigan's foreclosure-by-advertisement statute and collecting cases). For mortgages that will be foreclosed by sale, the statute requires notices be published for four consecutive weeks in a newspaper published in the county where property is located. Mich. Comp. Laws § 600.3208. In addition, within fifteen days after the first notice is published, the notice must be posted in a conspicuous place on the property described in the notice. Id. Foreclosure sales may be adjourned by posting a notice of the adjournment at the time of and at the place where the sale is to be made. Id. § 600.3220. If the sale is adjourned for more than one week at one time, the notice of adjournment must also be published in the newspaper were notice of the sale was published. Id. "[P]ersonal service is not required by the statute; instead, publication in a newspaper for four consecutive weeks and a posting of the foreclosure notice on the premise is all that is required." Cheff , 513 N.W.2d at 441.
Wells Fargo is entitled to summary judgment on any claim arising from the manner or sufficiency of the notice provided to Hebeler.[1] The record supports the conclusion that Wells Fargo provided Hebeler the notices required by Michigan's statute. The record also establishes that the weekly adjournments of the foreclosure sale were properly posted. The sole evidence in the record weighing in Hebeler's favor is her assertion that she did not see the posted notice. But, her assertion does not undermine the evidence submitted by Wells Fargo that the notice was so posted. Both statements could be true. The notice was posted and Hebeler did not see the notice. The record contains no disputes of material facts concerning the notices required by the Michigan's statute.
B. Bad Faith
Defendant moves for summary judgment on any claim arising from Hebeler's assertion that the foreclosure should not have proceeded while her mortgage assistance package was being processed. Defendant notes that Hebeler "does not specify the cause of action this suggestion purportedly supports[.]" (ECF No. 24 at 10 PageID.206.)
On November 30, 2016, a "home preservation specialist" from Wells Fargo contacted Hebeler by letter. (ECF No. 21-22.) The specialist stated that she would be helping Hebeler "through every step of the mortgage assistance process." (Id. PageID.167.) In a letter dated December 29, 2016, the specialist acknowledged receipt of documents supporting Hebeler's request for mortgage assistance. (ECF No. 21-23.) In this letter, the specialist stated that "[i]f your loan has been referred to foreclosure and you have submitted all required documentation, we will not conduct a foreclosure sale on this loan while your documents *688 are being reviewed and if allowed by state law and/or investor guidelines." (Id. PageID.169.) In March 2017 (ECF No. 24-4 PageID.272-73), in April 2017 (ECF No. 24-5 PageID.278) and in May 2017 (ECF No. 24-6 PageID.284), the specialist identified problems with the documents submitted by Hebeler and explained what information was still needed.[2] In each of these letters, the specialist wrote "[w]e will not move forward with conducting a foreclosure sale while we wait for you to return the requested documents to us, by the due date noted in this letter." (E.g., ECF No. 24-6 Letter May 2017 PageID.287.) On June 20, 2017, the specialist sent a Hebeler letter stating that "[b]ecause you have not provided the required documentation, we are unable to offer you assistance options." (ECF No. 24-7 PageID.290.)
Defendant addresses Hebeler's claim as one for an implied agreement or a breach of a duty of good faith. Michigan does not recognize a cause of action for an alleged breach of an implied covenant of good faith and fair dealing. Coyer v. HSBC Mortg. Servs., Inc. , 701 F.3d 1104, 1108 (6th Cir. 2012) (quoting Belle Isle Grill Corp. v. City of Detroit , 256 Mich.App. 463, 666 N.W.2d 271, 279 (2003) ). In addition, Hebeler has not identified any statutory or contractual obligation imposed on or assumed by Defendant to consider the loan modification requests. Once Hebeler failed to make the required payments and defaulted on the loan, Defendant had the contractual right to begin foreclosure proceedings and could "accept, reject, or ignore [Hebeler's] loan modification requests." Brimm v. Wells Fargo Bank, N.A. , 688 F. App'x 329, 331 (6th Cir. 2017).
Accordingly, Defendant is entitled to summary judgment on any claim arising from the allegations that it acted in bad faith when processing Hebeler's loan modification request. Hebeler has not identified a recognized cause of action that would be supported by her allegations and evidence.[3]
C. Agricultural Purposes
The redemption period following a foreclosure sale depends, in part, on how the property was used prior to foreclosure. For residential property that has not been abandoned, the redemption period is six months.[4] Mich. Comp. Laws § 600.3240(8).
*689 Where the property is used for agriculture purposes, the redemption period is one year from the date of the foreclosure sale. Id. § 600.3240(11). The statute sets forth presumptions and the burden for establishing whether property is used for agricultural purposes.
(16) For purposes of this section, there is a presumption that the property is used for agricultural purposes if, before the foreclosure sale under this chapter, the mortgagor provides the party foreclosing on the mortgage and the foreclosing party's attorney proof that the mortgagor filed a section F to the mortgagor's federal income tax form 1040 for the year preceding the year in which the proceedings to foreclose the mortgage were commenced and records an affidavit with the register of deeds for the county in which the property is located stating that the proof has been delivered. If the mortgagor fails to provide proof and record an affidavit as required by this subsection before the foreclosure sale, there is a presumption that the property is not used for agricultural purposes. The party foreclosing the mortgage or the mortgagor may file a civil action to produce evidence to rebut a presumption created by this subsection. An action under this subsection shall be filed before the expiration of the redemption period that would apply if the property is determined not to be used for agricultural purposes.
Id. § 600.3240(16). The statute does not define the phrase "agricultural purposes." The parties have not identified any authority interpreting this statute and this Court has not located any authority on its own.[5]
For this issue, the Court must determine if subsection (8) or subsection (11) applies to the foreclosed property. If the property was residential, subsection (8) applies and the redemption period was six months. If the property was used for agricultural purposes, subsection (11) applies and the redemption period was one year. For redemption periods, the statutory scheme imposes a forced choice, there can be only one redemption period and it must be for a certain amount of time. This is true even when the property was used for both residential and agricultural purposes.
The Court must keep in mind general principles of statutory construction. The first inquiry is to determine whether the language has a plain and unambiguous meaning. Robinson v. Shell Oil Co. , 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341, 117 S.Ct. 843 (citations omitted). The meaning of a disputed term or phrase thus depends on context, not just within the specific provision, but within the statute as a whole. King v. St. Vincent's Hosp. , 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). While phrases may appear unambiguous in isolation, that interpretation may be undermined when viewed in the larger statutory context. See, e.g., King v. Burwell , --- U.S. ----, 135 S. Ct. 2480, 2495, 192 L.Ed.2d 483 (2015) ("Petitioners' arguments about the plain meaning of Section 36B are strong. But while the meaning of the phrase 'an Exchange established by the State under [ 42 U.S.C. § 18031 ]' may *690 seem plain 'when viewed in isolation,' such a reading turns out to be 'untenable in light ff [the statute] as a whole.").
Hebeler is not entitled to a presumption that her property is used for agricultural purposes. The foreclosure proceedings were initiated in November 2016. Hebeler did not file a schedule F with her 2015 federal income taxes.[6] (ECF No. 1-1 PageID.30-33.) As required by the statute, a presumption arises that the foreclosed property was not used for agricultural purposes and Hebeler must produce evidence to rebut the presumption. Notably, the filing of a schedule F does not resolve the issue. Even if Hebeler had filed a schedule F in 2015, Defendant could have challenged the presumption that the property was used for agricultural purposes.
Three factors weigh against concluding that the property was used for agricultural purposes. None are dispositive. First, the record contains evidence that Hebeler used the property for residential purposes. At her deposition, Hebeler conceded that she has lived at this address since 1998. (ECF No. 21-21 Hebeler Dep. at 6 PageID.153.) In the first paragraph of the complaint, Hebeler states that she is "the owner of, and is a resident of," the disputed parcel of property. (ECF No. 1-1 Compl. ¶ 1 PageID.4.) In the affidavit she filed with the Clinton County Register of Deeds concerning her 2016 schedule F, Hebeler states that she "resides" on the disputed parcel. (PageID.22.) Hebeler's 2015 federal tax return (PageID.30) and her 2016 federal tax return (PageID.301) both list the disputed property has her home address. And, all of the correspondence from Defendant to Hebeler was sent to the same address.
Second, the record contains no evidence that agricultural use was a consideration by either party when the mortgage was issued. Hebeler has not demonstrated that the loan was for the purpose of acquiring agricultural land. Hebeler has not demonstrated that the mortgagee considered agricultural uses when valuing the land. The record contains no evidence about how the land was zoned when the mortgage was granted. And, without such evidence, one party should not be able to assert agricultural use as a consideration when the mortgage is foreclosed.
Third, the evidence in the record demonstrates that value of Hebeler's economic enterprise is de minimis when compared to the value of the mortgaged property. There is evidence in the record that Hebeler has sold agricultural products. Hebeler testified that she has been growing produce for sale since 1999. (ECF No. 21-21 Hebeler Dep. at 75 PageID.165.) In 2015, 2016, and 2017, Hebeler sold some trees, shrubs and vegetables that she grew on her property. Hebeler has also sought to establish herself as a seller of agricultural products. In 2017, Hebeler sought a business license and permit to sell products and a farmer's market. In June 2017, Hebeler applied to sell agricultural products at the Village Farmer's Market in Traverse City. (ECF No. 1-1 PageID.27.) In September 2017, Hebeler submitted articles of incorporation to the Michigan Department of Licensing and Regulatory Affairs for "Maple Flow Farm, LLC." (ECF No. 24-12 PageID.305.)
The only evidence in the record about the agricultural enterprise prior to the foreclosure proceedings shows that Hebeler *691 claimed approximately $ 700 in income from the sale of trees and shrubs. (ECF No. 1-1 2015 Federal Income Tax PageID.30-33; ECF No. 1-1 Income Statement PageID.34.) Her agricultural enterprise expanded very modestly in 2016 and she declared a gross income of $ 3,349 on her schedule F. The initial loan on the property was for $ 187,000 and she owed more than $ 220,000.
When deciding which redemption period applies, the Court must keep in mind that property can be used for multiple purposes, and sometime those uses will occur at the same time. Contrary to the Hebeler's proposed interpretation, Subsection (11) cannot be read in isolation. The Court must also consider the presumptions and burden identified in subsection (16) and the other categories of property usage set forth in subsection (7) through (10). For the purpose of a foreclosure sale redemption period, selling (after the commencement of foreclosure) a few thousand dollars of trees and vegetables grown in a backyard does not transform a primary residence into property used for agricultural purposes within the meaning of the statute. The property's value and the mortgage loan have only a de minimis relationship to the expenses and income associated with Hebeler's agricultural enterprise. When read in context, subsection (11) does not indicate that the one-year redemption period applies when property is used for any agricultural purpose.
The Court has also considered the purpose of the subsection (11). Agricultural products, typically crops, take time to grow before they can be harvested and sold. The time from soil preparation, to planting, to harvesting can exceed six months. The income stream from land used for agriculture might not be realized before a six month redemption period expires. Accordingly, the Legislature opted to increase the redemption period for foreclosures on land used for agricultural purposes. Nothing in the statute suggests the Legislature intended the same protections for individuals who grow vegetables in their yard and sell them on the side of the road.
To be clear, the Court resolves the redemption period dispute as an issue of statutory interpretation, a legal issue. The parties do not disagree about the facts; there are no genuine disputes. The parties disagree how those facts fit within the statutory scheme. And, because of how the Court has interpreted the statute, the facts establish that the foreclosed property was residential and the redemption period is six months.
Accordingly, on the redemption period issue, Defendant is entitled to summary judgment and the Court will deny Hebeler's motion for summary judgment.
IV.
As an issue of first impression, the Court finds that selling produce grown in the yard of your residence does not entitle the foreclosed property owner to the one-year redemption period afforded to foreclosures of property used for agricultural purposes. In context of the foreclosure-by-advertisement statute, the agricultural enterprise must have more than a de minimis relationship to the mortgage and to the value of the property. Accordingly, Hebeler had six months, not one year, to redeem her property after the foreclosure sale.
ORDER
For the reasons provided in the accompanying Opinion, Defendant Wells Fargo's motion for summary judgment (ECF No. 23) is GRANTED and Plaintiff Melissa Hebeler's motion for partial summary judgment (ECF No. 19) is DENIED. The *692 claims in the complaint are DISMISSED WITH PREJUDICE.
IT IS SO ORDERED.

In her brief in support, Hebeler limits her motion to the issue of the proper redemption period, although she explains that the complaint also asserts that the foreclosure sale is void because of the lack of notice. (ECF No. 21 at 13 PageID.107.) Defendant did move for summary judgment on the issue of the required notice. Although Hebeler discusses the notices in her response, she does not address the statute or cite any legal authority for her claim.

Inferring from the documents in the record, Hebeler likely sent a profit and loss statement for "Hebeler Farms / Services," which she described as a business for "produce, trees, shrubs, decorative items, jewelry." (ECF No. 21-18 PageID.147.) The specialist asked Hebeler to submit forms that distinguished between the produce and trees business and the decorative items and jewelry business. Hebeler communicated with the specialist to explain why she (Hebeler) could not provide a profit and loss statement for her tree and produce business. (ECF No. 21-24.) The specialist also asked for additional information about Hebeler's decorative items and jewelry business. Hebeler apparently sent multiple profit and loss statements, so the specialist also asked Hebeler to explain and reconcile the inconsistencies between the multiple statements.

In her brief in support, Hebeler states that she is not seeking summary judgment on the claim. "Whether the sale is void because of bad faith is not an issue which the Plaintiff seeks summary judgment on at this time." (ECF No. 21 at 13 PageID.107.) Defendant did seek summary judgment on any claim arising from the bad faith allegations. In her response, Hebeler again asserts her allegations of bad faith, but does not identify any legal authority that identifies a cause of action based on those claims.

The full provision reads as follows:
(8) Subject to subsections (9) to (11) and section 3238, for a mortgage executed on or after January 1, 1965, of residential property not exceeding 4 units, if the amount claimed to be due on the mortgage at the date of the notice of foreclosure is more than 66-2/3% of the original indebtedness secured by the mortgage, the redemption period is six months.
Mich. Comp. Laws § 600.3240(8).

The statutory provision recently enacted, becoming effective on December 22, 2011. 2011 Mich. Pub. Acts No. 303.

Hebeler did file a schedule F with her 2016 federal taxes. (ECF No. 1-1 PageID.24.) And, in 2017, she filed an affidavit attesting to the schedule F with the Clinton County Register of Deeds. (ECF No. 1-1 PageID.22.) Both of these documents were filed after the foreclosure proceedings were initiated.